IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

CAROL G. HAMPTON,                           )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )          No. 2:11-CV-076
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
                    Defendant.              )

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of

defendant Commissioner's final decision denying plaintiff's claims for disability insurance

and Supplemental Security Income ("SSI") benefits.  For the reasons provided herein,

defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion

for judgment on the pleadings [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1969.  She applied for benefits in November 2008,

claiming to be disabled by "severe fibromyalgia, neck and back injuries from car accident,

central nervous system and spinal damage." [Tr. 121, 129, 157].  Plaintiff alleges a disability

onset date of September 19, 2008.  [Tr. 121, 129].  Her applications were denied initially and

on reconsideration.   Plaintiff then requested a hearing, which took place before an

Administrative Law Judge ("ALJ") on January 8, 2010.

The following month, the ALJ issued a decision denying benefits. He found that plaintiff suffers from depression, anxiety, "mild degenerative disc disease, fibromyalgia syndrome, myofascial pain syndrome, hypertension, [and] obesity," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 16]. The ALJ further found that, despite her impairments, plaintiff retains the residual functional capacity ("RFC") for a range of light exertion with limitations in concentration, postural activities, and repetitive use of the right arm. [Tr. 17]. Relying on vocational expert ("VE") testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the national economy. [Tr. 24]. The ALJ thus concluded that plaintiff is not disabled.

Plaintiff then sought, but was denied, review from the Commissioner's Appeals Council. [Tr. 1]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g). On appeal, plaintiff argues that the ALJ erred in disregarding the opinion of her treating rheumatologist.

II.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v.*

2

*Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3

42 U.S.C. § 423(d)(2)(A).[1]  Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five. *See id.*

III.

*Analysis*

Plaintiff claims to suffer constant total-body pain and fatigue.  She largely attributes these symptoms to fibromyalgia, a condition that she alleges has gradually

---

[1] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  42 U.S.C. § 1382.  "Disability," for SSI purposes, is defined the same as under § 423.  42 U.S.C. § 1382c(a)(3).

4

worsened since a 2005 car accident.  [Tr. 34-35].

Since April 2008, plaintiff has been under the care of Dr. John Winfield, who is identified as the "Herman and Louise Smith Distinguished Professor of Medicine in Arthritis Emeritus at the University of North Carolina at Chapel Hill."  [Tr. 908].  Dr. Winfield now sees patients at his Appalachian Regional Rheumatology office.  He has purportedly "written more than 150 articles in peer-review medical and scientific journals" and has "a special interest in fibromyalgia and related chronic pain and fatigue syndrome."  [Tr. 908].

Dr. Winfield's file states that on several occasions plaintiff exhibited "multiple tender points" and/or "several tender points."  [Tr. 640-41, 643, 648, 651, 655, 659].  He diagnosed fibromyalgia.  [Tr. 641].[2]  In September 2008, Dr. Winfield wrote that plaintiff suffers "ten out of ten" pain despite medication.  [Tr. 647].  In December 2008, January 2009, June 2009, and August 2009, Dr. Winfield wrote that plaintiff suffers "ten out of ten" pain *and* fatigue despite medication.  [Tr. 650, 653-54, 658].  Dr. Winfield has also written that anxiety and depression are "huge problems," and that "[h]er knees cannot support her current weight."  [Tr. 654-55, 658].[3]

---

[2]  "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007).

[3]  Plaintiff stands 5' 2" tall and weighs up to 250 pounds. [Tr. 611].  At her first appointment, Dr. Winfield wrote, "I gave her some articles to read and encourage [sic] graded aerobic exercise." [Tr. 641].  Curiously, however, his file references no further instructions on exercise or weight loss.

5

On four occasions, Dr. Winfield has opined that plaintiff is incapable of working.

> [October 14, 2008] This patient is under my care for fibromyalgia. An associated problem is morbid obesity. Despite optimum medical therapy, she remains very symptomatic. She is unable to work, and I do not expect her to improve sufficiently for any type of gainful employment in the future. [Tr. 638].

***

> [June 17, 2009] She is very symptomatic and impaired despite therapy. I fully support her application for disability. [Tr. 656].

***

> [September 3, 2009] This patient is under my care for fibromyalgia. Despite optimum medical therapy . . . and compliance with her medical regimen, she continues to be highly symptomatic, with pain and fatigue both rated as 10/10 . . . .
>
> It is my opinion that she is permanently disabled for work of any type or for any duration. [Tr. 645].

***

> [January 5, 2010] This patient is under my care for fibromyalgia. Despite optimum medical therapy and compliance with her medical regimen, she continues to exhibit severe pain and fatigue, and associated major impairment in many activities of living. In my opinion, she is permanently disabled for any type of employment. [Tr. 905].[4]

---

[4] In October 2008, physical therapist Dan Robertson similarly opined "that this patient is likely a good candidate for consideration of disability rating." [Tr. 359]. On appeal, plaintiff raises no argument pertaining to Mr. Robertson's opinion, and any such issue is therefore waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

The opinions of treating physicians are entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner may reject the opinion of a treating physician if it is insufficiently supported and if the ALJ articulates a valid basis for doing so. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

On appeal, plaintiff argues that Dr. Winfield's views were entitled to complete deference based on his area of specialty, his professional accomplishments, and his status as a treating physician. Plaintiff is completely incorrect.

A treating physician's mere statement that a patient is "disabled" or "unable to work" does not constitute a medical opinion. Determination of ultimate issues such as disability are reserved to the Commissioner, not the physician. *See Harris*, 756 F.2d at 435; 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Correctly following this basic principle, the ALJ rejected Dr. Winfield's views.

> Dr. Winfield's statement that the claimant is unable to work is not a specific assessment of the claimant's abilities and/or limitations, but is a conclusion dispositive of the case and, as such, is a finding reserved to the Commissioner . . . . Thus, his opinion is of no probative value.

[Tr. 23].

The ALJ did not err. Dr. Winfield's statements merely recite plaintiff's alleged conditions rather than addressing how those conditions affect specific vocational capacities. For that reason, Dr. Winfield's statements are of no import. *Cf. Rogers*, 486 F.3d at 238

7

(rather than offering broad, conclusory statements, treating physician instead specified lifting, standing, sitting, and postural limitations related to his diagnosis of fibromyalgia).

Furthermore, the ALJ went on to address the various conditions cited by Dr. Winfield. For example, it appears that Dr. Winfield's views may have been colored by his observation that plaintiff's anxiety and depression are "huge problems." Rather than adopting Dr. Winfield's broad and conclusory statements, the ALJ instead relied on the more specific vocational opinion of the consulting psychological sources. Psychological examiner Anna Palmer and clinical psychologist Diane Whitehead performed a mental status examination in January 2009. Although they diagnosed adjustment disorder with mixed anxiety and depressed mood, the examiners predicted no mental limitation other than a restriction to no more than simple decision-making. [Tr. 498]. The ALJ incorporated that opinion into his RFC by limiting plaintiff to "simple, routine, repetitive" work. There was no error. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

As for plaintiff's claim (adopted by Dr. Winfield) that she suffers constant "ten out of ten" pain and fatigue throughout her body, the record indicates that plaintiff can wash dishes, sweep, dust, wash and fold clothes, make beds, and cook and grill simple meals, although plaintiff claims she can only do these activities for short periods of time. [Tr. 39, 165, 191]. Plaintiff can also drive, shop, feed two cats, visit her family and friends regularly,

8

attend church occasionally, and care for her five-year-old daughter while her husband is away for four consecutive days each workweek. [Tr. 165-66, 192, 194, 497].

The ALJ found that plaintiff's activity level is inconsistent with someone suffering from disabling pain and fatigue. [Tr. 22]. Based on her review of the administrative record, nonexamining Dr. Louise Patikas also opined that plaintiff's allegations were not fully credible in light of her activity level. [Tr. 634]. The court agrees. A person suffering constant, total-body, "ten out of ten" pain and fatigue would not be able to drive, care for a young child, regularly visit friends and family, occasionally attend church, or perform household chores even in short bursts. Dr. Winfield's repeated assessments of "ten out of ten" pain and fatigue indicate an undue reliance on plaintiff's self-reporting. That self-reporting in turn suggests, at a minimum, a tendency to exaggerate.

The ALJ set forth several additional reasons why he did not find plaintiff's self-reporting to be fully reliable. [Tr. 22]. The court specifically notes three such concerns:

> 1. Plaintiff told Dr. Winfield that her 2005 motor vehicle accident resulted in a "fractured spine" and that a chiropractor had recently diagnosed "three ruptured discs and [a] pinched nerve, all from the wreck." [Tr. 639]. However, in June 2005, physical therapist Lynee Livesay wrote that plaintiff's x-rays were "negative for fracture." [Tr. 796]. In April 2006, Dr. Dale Menard noted that x-rays at the time of the accident were "negative." [Tr. 715]. Dr. Menard observed "full range of motion of the lumbar spine" and did not "make much of" disc bulges shown on an MRI. [Tr. 715]. December 2005 and February 2006 cervical MRIs were unremarkable, as was an April 2006 lumbar MRI. [Tr. 881, 883-84]. The testifying medical expert, Dr. Susan Bland, stated that "[a]t no time [in the administrative record] was there any diagnosis of any fracture from the accident." [Tr. 42]. Quite plainly, the ALJ was correct in noting that the objective evidence did not support plaintiff's claims of suffering a "fractured spine." [Tr. 18-19].

9

2. Plaintiff was hospitalized in early October of 2008 due to hypertension. Plaintiff told hospital staff that she had suffered a transient ischemic attack (a mini-stroke) "one year ago." [Tr. 385, 392, 395, 402-03]. However, Dr. Patikas noted that the record contained "no medical documentation" of such a significant event. [Tr. 634]. Similarly, Dr. Bland testified that she could find no mention of a mini-stroke in the fall 2007 records, even though plaintiff "was continuously seeing providers during that time." [Tr. 46]. The court has reviewed the 909-page administrative record in this case and similarly finds no mention of the alleged mini-stroke. [Tr. 364-68, 549-57, 821-26].[5] The ALJ correctly noted this discrepancy. [Tr. 20].

3. Dr. Krish Purswani performed a physical consultative examination in January 2009. Plaintiff was using a "quad cane" that she claimed was recommended by Dr. Winfield. [Tr. 609]. Dr. Purswani wrote,

> The patient refused to stand or walk without the cane. Therefore, her natural gait could not be evaluated. With the cane, her gait was slow and antalgic. However, she could not explain her inability to stand. So we tried and after 15 seconds of standing, the patient started crying saying that she had pain and sat down. . . . However, . . . the cane use does not appear to be credible. There are no old records or any credible physical findings or anything in the history to suggest anything severe to indicate its medical necessity, so the cane is not medically necessary. . . . Effort was limited and she was uncooperative. . . .

[Tr. 611]. The court has reviewed Dr. Winfield's file and finds no record of a prescription for - *or even mention of the use of* - a cane. The ALJ found that issues pertaining to plaintiff's cane usage detracted from her overall believability [Tr. 22], and the court agrees.

The ALJ's RFC findings were well-supported by the testimony of Dr. Bland, who had the benefit of reviewing the entire medical record. The ALJ's findings were also supported by the opinions of Dr. Purswani and the psychological consultants, each of whom

---

[5] The court does note *February* 200<u>8</u> imaging of the head which revealed "[n]o evidence of aneurysm or other vascular abnormality" and "[n]o ischemic or atrophic changes." [Tr. 501-02].

had the opportunity to personally examine the plaintiff. These sources generated specific vocational assessments upon which the ALJ was able to rely, as opposed to the conclusory statements provided by Dr. Winfield.

Ultimately, "a *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits . . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citation and quotation omitted). In the present case, the ALJ concluded that plaintiff is not part of that minority. The ALJ relied on the specific findings of the examining and testifying sources rather than the conclusory views of the treating source. On the present record, the substantial evidence standard of review permits that "zone of choice." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

For the reasons provided herein, the final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge

11